NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**VISTAN CORPORATION,**
*Plaintiff-Appellant,*

**v.**

**FADEI USA, INC., PAN AMERICAN ENGINEERING AND EQUIPMENT CO., INC., MANUEL SILVA, AND MARIANI PACKING CO., INC.,**
*Defendants-Cross-Appellants.*

---

2013-1216, -1217

---

Appeals from the United States District Court for the Northern District of California in No. 10-CV-4862, Magistrate Judge Joseph C. Spero.

---

Decided: December 3, 2013

---

ROBERT A. MCFARLANE, Hanson Bridgett, LLP, of San Francisco, California, argued for plaintiff-appellant. With him on the brief was RUSSELL C. PETERSEN. Of counsel on the brief were MICHAEL N. BERG, Regard IP Law, of San Francisco, California; and MICHAEL J. BROWN, Michael J. Brown Law Office LLC, of Livingston, New Jersey.

MICHAEL J. THOMAS, Downey Brand, of Sacramento, California, argued for defendants-cross appellants.

————————————

Before O'MALLEY, BRYSON, and WALLACH, *Circuit Judges.*

BRYSON, *Circuit Judge.*

I

Appellant Vistan Corporation is the owner U.S. Patent No. 5,870,949 ("the '949 patent"), which is directed to an apparatus for pitting soft fruit, such as prunes and dates. Claims 5 and 12, the claims at issue in this case, recite a fruit-pitting apparatus in which fruit is conveyed in fruit holders toward pitting knives and then briefly stopped under the knives. The knives are then forced down through the fruit, ejecting the pits through the bottoms of the fruit holders. After pitting, the knives are retracted and the fruit holders are conveyed away from the knives.

As explained in the specification, the fruit holders are configured so that a variable-strength gripping force can be exerted on the individual pieces of fruit. When the fruit is gipped tightly, the fruit holders are said to be in a "closed" configuration. When the grip is relaxed, the fruit holders are in an "open" configuration. In order to improve the efficiency of the pitting operation and assist in removing the pitted fruit flesh from the pitting knives and the fruit holders, the fruit-gripping force is varied over the course of the pitting operation. The fruit holders are first pushed to a closed configuration as they approach the pitting knives. '949 patent, col. 19, ll. 43-51. Then, after the pit is ejected, the fruit holders are briefly opened and then reclosed while the pitting knives are still engaged with the fruit. *Id.*, col. 9, ll. 18-28; *id.*, col. 13, ll. 4-11. The knives are then retracted while the fruit holders are in a closed position. The fruit holders are then opened so that fruit remaining in the holders can be ejected after

the holders move out from under the pitting knives. *Id.*, col. 13, ll. 27-34.

The final limitation of claims 5 and 12 of the patent describes an "active assembly" whose function is to engage the fruit holders and apply the variable force. The active-assembly limitation in claim 5 recites:

> An active assembly positioned to engage the holders as the holders pass the pitting knife assembly, and configured to cause the pockets of each of the holders to be in the closed configuration during the pitting operation and to move the pockets of said each of the holders from the closed configuration to the open configuration after the pitting operation thereby improving efficiency of separation of pitted fruit flesh from the holders after said pitting operation.

'949 patent, col. 21, ll. 43-51. Claim 12 is similar to claim 5 except that it describes the active assembly as "configured to move relative to the holders so as to vary the gripping force exerted by the pockets on the specimens of fruit held in said holders during and after the pitting operation." *Id.*, col. 22, ll. 48-52.

## II

In October 2010 Vistan filed suit against the four defendants alleging infringement of the '949 patent. A claim construction hearing was held in January 2012. Neither Vistan nor the defendants argued that the active-assembly limitations should be construed as means-plus-function limitations under 35 U.S.C. § 112, ¶ 6 (2006). The district court, however, construed the active-assembly limitations as means-plus-function limitations because, according to the court, the "active assembly" is defined functionally instead of by reference to a particular structure or materials.

Applying section 112, paragraph 6, the district court looked to the specification of the '949 patent to identify the structure corresponding to the active-assembly limitation. The specification describes a class of embodiments that operate through intermittent motion of the fruit holders whereby "each embodiment includes an actively (e.g., pneumatically, or by solenoid) driven actuator assembly . . . used to move (at appropriate times during the pitting cycle) a pair of cam tracks 87 to vary the force with which each fruit holder 36 grips fruit during and after pitting." '949 patent, col. 18, ll. 52-58. The specification then describes a preferred embodiment in which "each actuator 88 is a mechanical linear actuator configured to pull or push track 87 coupled thereto." *Id.*, col. 20, ll. 15-17.

From those descriptions, the district court concluded that pneumatic and solenoid-based actuators are the only types of actuators identified by the specification. The court reasoned that the mechanical linear actuator referred to in the specification is simply "part of the entire class of embodiments" that must be driven pneumatically or by solenoid. The court thus found that mechanical linear actuators are not a class of actuators distinct from pneumatic and solenoid-based actuators, but are instead a subclass of those types of actuators.

The court construed the claimed active assembly as "an assembly containing pneumatically- or solenoid-driven actuators, or mechanical linear actuators, connected to a pair of cam tracks, and equivalents thereof." Even though that construction uses the disjunctive "or" to refer to mechanical linear actuators, the court clarified in its summary judgment order that mechanical linear actuators are not "a separate class of actuators that fall outside the patent's requirement that actuators be pneumatically- or solenoid-driven."

In its opinion on summary judgment, the district court compared the active assembly in the accused pitters with the corresponding structure in the '949 patent and determined that the accused structure was neither identical nor equivalent to the corresponding structure set forth in the specification.  For purposes of summary judgment, the court assumed that the accused pitters include mechanical linear actuators.  However, the court concluded that the accused pitters were not identical to the corresponding structure in the specification because the accused pitters "do not contain solenoid- or pneumatically-driven actuators, and no solenoid- or pneumatically-driven mechanical linear actuators."  Likewise, the court found that the accused pitter's servomotor-driven mechanical linear actuator was not equivalent to a pneumatic or solenoid-driven actuator because Vistan had not presented evidence that the servomotor power source functioned in "substantially the same way as a pneumatic or solenoid power source."  The court therefore granted summary judgment of noninfringement in favor of the defendants.

In light of its finding of noninfringement, the court declined to address whether the '949 patent was invalid for indefiniteness, and it therefore dismissed the defendants' counterclaims of invalidity without prejudice.

Vistan has appealed the district court's grant of summary judgment.  The defendants have cross-appealed, asking this court to declare the disputed claims invalid for indefiniteness under 35 U.S.C. § 112, ¶ 2 (2006).

### III

1.  The primary issue in this case is a narrow one.  We must decide whether the disclosure of a "mechanical linear actuator" in the '949 patent specification is a sufficient description of structure that "one skilled in the art will know and understand what structure corresponds" to

the claim limitations.  *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir. 1999).

Based on record evidence submitted by both Vistan and the defendants, we conclude that mechanical linear actuators are a distinct and identifiable class of actuators separate from pneumatic and solenoid-based actuators. The district court therefore erroneously granted summary judgment of noninfringement based on its conclusion that a mechanical linear actuator not driven pneumatically or by solenoid could not infringe the '949 patent.[1]

The evidence makes clear that a person of ordinary skill in the art would understand mechanical linear actuators to be a distinct and identifiable class of actuators.  Vistan's expert, Dr. Timothy Bowser, stated that "[a] mechanical linear actuator is an actuator . . . that is driven at least in part by a mechanical element such as a gear, threaded rod, cam, or crank, and that produces substantially linear motion."  Dr. Bowser agreed with a

---

[1]   We reject the defendants' argument that Vistan has waived its claim construction argument on appeal by not making its means-plus-function argument to the district court during the claim construction proceedings. The defendants assert that Vistan is limited on appeal to pressing its original argument that the claims are not in means-plus-function format and to arguing that the decision to construe the claims as means-plus-function claims was erroneous.  We reject that argument.  In the summary judgment proceedings, Vistan clearly presented, and the district court clearly decided, the question whether mechanical linear actuators are a distinct class of actuators whose disclosure in the specification is sufficient to satisfy section 112, paragraph 6.  Vistan's disagreement with the court's decision to invoke section 112, paragraph 6, does not disable it from arguing that the court's application of that provision was erroneous.

description from Wikipedia that states: "Mechanical linear actuators typically operate by conversion of rotary motion into linear motion. Conversion is commonly made via a few simple types of mechanisms: Screw . . . Wheel and axle . . . and cam actuators."

Other record evidence provides further support for Dr. Bowser's definition. The defendants' expert, Dr. Richard Klopp, presented a figure from the Standard Handbook of Machine Design that depicts eight linear actuators. Five of those actuators are labeled as hydraulic actuators. The other three are a lead screw, a worm gear with stationary nut, and a worm gear with stationary screw. Those three nonhydraulic actuators—which Dr. Bowser classified as mechanical linear actuators—are illustrated as devices that translate rotary motion about the depicted wheels into linear motion along the depicted shafts. The defendants' evidence is therefore consistent with Dr. Bowser's definition that mechanical linear actuators are devices that mechanically convert rotary motion into linear motion.[2]

The record establishes that a person skilled in the art would understand that mechanical linear actuators are powered by a mechanical input and that pneumatic and solenoid-based actuators are not. Pneumatic actuators are powered by pressurized air, while solenoids are powered by electrical energy. The reference in the '949 specification to "mechanical linear actuator" thus discloses structure that is no less specific than the references to pneumatic and solenoid-based actuators.

---

[2]    Dr. Klopp's broader definition of "mechanical linear actuator" as a device that simply "causes motion between two machine elements wherein the motion occurs along a straight line" is supported only by a textbook definition of "linear actuator"; the textbook does not provide that definition for "*mechanical* linear actuator."

The district court erroneously conflated an actuator with the power source that drives the actuator, as demonstrated by the court's analysis of equivalency. The court faulted Vistan for failing to produce evidence that the accused actuator's servomotor power source was equivalent to a "pneumatic or solenoid power source." The specification's references to pneumatic and solenoid-based actuators, however, describe a type of actuator, not a type of power source.

The evidence of record shows that an actuator's power source need not be part of the actuator itself. Solenoid-based actuators, for example, rely on an external source of electrical energy, and pneumatic actuators rely on pressure from externally compressed air. Likewise, mechanical linear actuators rely on an external rotating mechanical force that the actuator converts into linear force. The mechanism that supplies the rotating mechanical input force (e.g., an electric motor) need not be an integrated part of the actuator. Indeed the mechanical linear actuators depicted in the figures provided by Dr. Klopp show only an interface for connecting a rotating mechanical input; they do not show the device that generates the rotating force as part of the mechanical linear actuator.

The '949 specification discloses pneumatic and solenoid-based actuators as examples of the broader class of actively driven actuators. '949 patent, col. 18, ll. 52-54. The specification then describes an embodiment in which the actively driven actuator is a mechanical linear actuator. *Id.*, col. 20, ll. 14-16. The specification nowhere states or suggests that an "actively . . . driven actuator assembly," *id.*, col. 18, ll. 53-54, must be driven pneumatically or by solenoid. In fact, the specification indicates the contrary by its use of the term "e.g." in the statement that "each embodiment includes an actively (e.g., pneumatically, or by solenoid) driven actuator assembly." *Id.*

2.  The defendants raise a number of other issues in their brief as appellees, complaining of the allegedly shifting nature of Vistan's infringement contentions, and contending that the accused devices do not infringe because their actuators do not move linearly and because they do not move in response to control signals. The district court did not address those issues in its summary judgment opinion, and we decline to address them for the first time on appeal.

3.  Vistan argues that the defendants were guilty of spoliation of evidence because, after Vistan had examined one of the accused pitting machines, the defendants disassembled it and used it for spare parts. The district court denied Vistan's request to treat that conduct as spoliation because Vistan's amended infringement contentions did not distinguish the destroyed pitter from the other accused pitters and because Vistan did not show that the unavailability of the destroyed machine, which Vistan had already examined, would affect Vistan's rights in any way. We see no basis to conclude that the court abused its discretion in failing to find that the defendants engaged in sanctionable spoliation of evidence.

4.  Vistan also complains that the district court denied its motion to amend the Complaint to include the defendants' 2012 model pitter among the accused products. The district court denied Vistan's motion because at the time the motion was filed the case was in its "final stage." We need not determine whether that decision was an abuse of discretion because the litigation is no longer in its final stage. Accordingly, the district court should reconsider that motion pursuant to the Northern District of California's Local Rules and in light of the posture of the case following the remand.

## IV

In their cross-appeal, the defendants ask this court to invalidate the disputed claims of the '949 patent based on

the alleged indefiniteness of the references to "mechanical linear actuator" and to "control signals . . . generated (in any of a number of well known ways) by a conventional timing system operating in synchronism" with the pitting knives. '949 patent, col. 20, ll. 8-11.

We decline to address those issues in the absence of a district court ruling on invalidity. As we have explained, this court "will not undertake the indefiniteness and enablement inquiries in the first instance." *Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1299 (Fed. Cir. 2010). Although this appeal has allowed us to determine that "mechanical linear actuator" is sufficiently definite structure for the purpose of section 112, paragraph 6, the district court declined to address whether the disclosure of a "conventional timing system" was sufficiently definite. We will not decide that issue in the first instance without having a decision by the district court to review. The district court will be free to revisit the counterclaims of invalidity in light of the posture of the case on remand.

Each party shall bear its own costs for this appeal.

**REVERSED and REMANDED**