NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE TAYLOR MADE GOLF COMPANY, INC.**

---

2013-1552

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, in Reexamination No. 95/000,378.

---

Decided: September 30, 2014

---

GARY A. CLARK, Sheppard, Mullin, Richter & Hampton LLP, of Los Angeles, California, for appellant. With him on the brief was BRIDGETTE A. AGNESS.

---

Before DYK and O'MALLEY, *Circuit Judges.*[*]

---

[*] Randall R. Rader, who retired from the position of Circuit Judge on June 30, 2014, did not participate in this decision.

Per Curiam.

The issue on appeal is whether the U.S. Patent and Trademark Office's (PTO) Patent Trial and Appeals Board erred in not rejecting on grounds of obviousness claims 8, 9, 12, and 13 of U.S. Patent No. 7,344,450 (the '450 patent). These claims are directed to a method involving press fitting or latching weights to a golf club. Because the Board erroneously failed to consider the general knowledge possessed by one skilled in the art of press fitting in applying the obviousness standard, we vacate the Board's decision and remand for further proceedings.

## Background

The '450 patent was filed on August 24, 2006 (claiming priority to January 10, 2002) and issued on March 18, 2008, to David P. Billings, who assigned it to Dogleg Right Corporation (Dogleg). The claims of the '450 patent are generally directed to a method of shifting the center of gravity of a golf club head by attaching removable weights. *See* '450 patent col. 3 ll. 14–21. Shifting the center of gravity allows the user to change the behavior of the club and achieve certain results with respect to ball-flight when striking the ball. *See id.* col. 1 ll. 29–34. A removable "port cover" provides the golfer access to the interior cavity of the club head. *Id.* col. 3 ll. 48–62. The golfer can place weights, such as pieces of lead tape, at various places within the cavity. *See id.* The patent discloses that the port cover may preferably be attached via bolts that pass through the cover and screw into the club head, but "other methods, such as a weighting-port cover that screws into the body [], latches, press-fits, or the like, may be used." *Id.* col. 4, ll. 38–42.

Independent claim 1 of the '450 patent is representative:

1. A method for adjusting a center of gravity of a golf club head after its manufacture, the golf club including a head comprising a hollow shell having a plurality of thin walls that collectively form a club head, the club head including a face for striking a golf ball, a heel portion, a toe portion, a back portion and a sole and having an original center of gravity prior to addition of any weights, the club head further including a plurality of user-attachable and detachable, discrete weights arranged on the shell at spaced-apart locations, the method comprising:

hitting golf balls with the club with the plurality of weights detachable secured to the shell in a first arrangement, in which the plurality of weights are positioned in at least two locations other than the sole, permitting movement of the center of gravity of the club head from the location of the original center of gravity toward the club face, wherein the sole is formed of one or more substantially planar surfaces at the bottom of the club head facing downwardly; and

after hitting golf balls with the club, forming a second arrangement with the plurality of weights detachably secured to the shell, the second arrangement moving the golf club head center of gravity forward of the original center of gravity in the general direction of a first axis extending between the face and back portion of the head and in the general direction of a second axis extending between the heel and the toe portions.

'450 patent col. 6 ll. 20–47.

This appeal involves dependent claims 8, 9, 12, and 13, of which claims 8 and 9 are representative:

8. The method of claim 1, wherein the step of forming the second arrangement with the plurality of weights further comprises *press fitting at least one of the plurality of weights to the shell.*

9. The method of claim 1, wherein the step of forming the second arrangement with the plurality of weights further comprises *securing at least one of the plurality of weights to the shell by one or more latches.*

'450 patent col. 7 ll. 5–12 (emphasis added).

Taylor Made Golf Company, Inc. (Taylor Made) requested inter partes reexamination of all claims (1–18) of the '450 patent. The PTO granted the request in December 2008 to determine the obviousness of the claims under 35 U.S.C. § 103(a) based on, *inter alia*, combinations including prior art patents known as "Parente" (U.S. Patent No. 5,911,638) and "Reynolds" (U.S. Patent No. 5,746,664). After initially rejecting all of the claims, the Examiner ultimately invalidated claims 1–7, 10–11, and 14–18 but confirmed the patentability of claims 8, 9, 12, and 13. On appeal, the Board agreed with the Examiner's determinations. The Examiner found, and the Board affirmed, that nearly all of the limitations of the '450 patent are disclosed by the prior art, including the adjustment of the center of gravity of a golf club head using weights that are adjustable by the golfer. As a result, the Board affirmed that claims 1–7, 10–11, and 14–18 were invalid as obvious over the prior art. It also affirmed the determination that claims 8, 9, 12, and 13 would not have been obvious over the prior art.

The further limitations added by dependent claims 8, 9, 12, and 13 relate to securing the weights via press fitting or via latches. Observing that neither "press fitting" nor "latches" are defined in the '450 patent, the Board adopted Dogleg's proposed constructions, provided

by its declarant Peter Piotrowski, which the Board noted were the only proposed constructions. Mr. Piotrowski testified that a person of ordinary skill would understand "press fit" to mean "an interference fit formed by pressing, or forcing[,] one component into another"; and he testified that a person of ordinary skill would understand a "latch" as "a structure that slides, snaps, or is spr[u]ng into place to hold by a tab or hook po[rtion] a component in place."[1] App. 335 (quoting App. 143 (Piotrowski Decl. ¶¶ 69, 70)). The Board found "that Parente and Reynolds, Jr. fail to disclose or suggest press-fitting weights to the shell as recited in claim 8." App. 336. On rehearing, the Board modified its construction of the claims to include both direct and indirect methods of press fitting and latching a weight to a shell, but declined to alter its decision affirming the continuing validity of claims 8, 9, 12, and 13.

Taylor Made appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A). We review the Board's decision de novo for errors of law and for substantial evidence as to questions of fact. *In re Teles AG Informationstechnologien*, 747 F.3d 1357, 1361 (Fed. Cir. 2014). Claim construction is a question of law that is subject to de novo review. *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1292 (Fed. Cir. 2014) (en banc); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454–55 (Fed. Cir. 1998) (en banc). We review the Board's claim construction to determine if it gives claims their broadest reasonable construction. *Rambus v. Rea*, 731 F.3d 1248, 1252 (Fed. Cir. 2013).

---

[1] Neither the Board nor Taylor Made address the difference, if any, between "press fitting" and "latches" as relevant to this appeal. Both the Board opinion and Taylor Made's brief treat the terms as interchangeable.

DISCUSSION

We conclude that the Board correctly construed the term "press fit" under the broadest reasonable construction standard. The '450 patent does not define the term. The Board quoted the Piotrowski declaration, which in turn quoted Wikipedia, and defined press fitting as "an interference fit formed by pressing, or forcing[,] one component into another," App. 335 (quoting App. 143 (Piotrowski Decl. ¶¶ 69, 70)), and, at Taylor Made's request, later expanded that construction to encompass "processes where the weighting material is attached to a member, and then the member is press fit [or latched] to the club head." Therefore, the sole remaining issue is whether the Board correctly determined that the disclosure of press fitting in the prior art did not render the claimed invention obvious because the prior art "fails to disclose or suggest press-fitting or latching at least one weight to the shell of a golf club head." App. 335. We find that the Board was obligated to consider whether it would have been obvious to utilize press fitting even though the prior art did not disclose the use of press fitting for the specific purpose of the invention.

With respect to these particular claims, two prior art references relating to press fitting were before the Board. The first prior art reference, Parente, discloses a golf club assembly that allows a user to change the club head's center of gravity post-manufacture. Parente discloses a "sole plate" that is attached to the bottom of the club head, and is generally held in place by screws that act as weights which modify the center of gravity. '638 patent col. 1 ll. 57–col. 2 l. 10. The second prior art reference pertinent to this appeal, Reynolds, also discloses a putter assembly that allows a user to change the club head's center of gravity post-manufacture.

There is no question here that press fitting as a means of attachment was common knowledge at the time of the invention. Parente, Reynolds, and the patentee's own evidence, all of which were before the Board, confirm the fact that press fitting was well known in the art. Parente discloses "an interference or interlocking fit," '638 patent col. 3 ll. 3–4, as a means of "releasably holding the sole plate" to the shell of the club head, *id.* col. 4 ll. 37–38, which is in line with the Board's construction of "press fitting." And Reynolds explicitly discloses "introducing different press-fit substances into the body of the putter head" during the manufacturing process. '664 patent col. 2 ll. 35–37. Mr. Piotrowski, the patentee's declarant, testified that "[o]ne of ordinary skill in the art at the time of the invention of the ['450 patent] would have understood that a 'press fit' is an interference fit formed by pressing, or forcing, one component into another," App. 143 (Piotrowski Decl. ¶ 69), and quoted a Wikipedia article (which is itself indicative of common knowledge) on press fitting as being "[with]in the knowledge of one of ordinary skill in the art," App. 144 (Piotrowski Decl. ¶¶ 72–73); *see also, e.g.*, *Vistan Corp. v. Fadei USA, Inc.*, 547 F. App'x 986, 990 (Fed. Cir. 2013) (relying in part on an expert's invocation of Wikipedia to determine what a person of ordinary skill in the art would understand a term to mean as part of a written description inquiry).

In addition to this evidence, *In re Dulberg*, 289 F.2d 522 (C.C.P.A. 1961), was cited to the Board and further illustrates that press fitting was well known as a means to attach parts of a device, and has been so at least since 1961. In fact, press fitting was not just well-known at the time of *Dulberg*; it was *so* well-known that our predecessor court found that "[n]o specific prior art teaching would be necessary to show that operation." *Id.* at 523.

Given that the common knowledge of press fitting was before the Board, it was error for the Board to fail to

consider whether a person of ordinary skill in the art would be motivated to combine press fitting with the prior art (which, as the Board found, disclosed every other limitation of the '450 patent) to arrive at the claimed invention. As we recently reaffirmed, the Supreme Court and this court require that, as part of the obviousness analysis, the prior art must be viewed in the context of what was generally known in the art at the time of the invention. *See Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013) ("[T]he [*KSR*] Court required an analysis that reads the prior art in context, taking account of 'demands known to the design community,' 'the background knowledge possessed by a person having ordinary skill in the art,' and 'the inferences and creative steps that a person of ordinary skill in the art would employ.'" (quoting *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 418 (2007))).

The Board agreed with the Examiner "that Parente and Reynolds, Jr. fail to disclose or suggest press-fitting weights to the shell," App. 336, but neither the Examiner nor the Board considered the record evidence before it that press fitting was common knowledge at the time of the invention and was disclosed even in the specific prior art references considered by the Board. The Board's obviousness analysis, which consists of a single sentence, does not consider the prior art in the context of the background knowledge that a person of ordinary skill in the art would have had with respect to press fitting. *See KSR*, 550 U.S. at 417 ("[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill."); *see also id.* at 420 ("The second error of the Court of Appeals lay in its assumption that a person of ordinary skill attempting to

solve a problem will be led only to those elements of prior art designed to solve the same problem.").

The Board's determination of non-obviousness as to claims 8, 9, 12, and 13 is vacated, and the matter is remanded to the Board.  On remand, the Board should consider the disclosure of the prior art in the context of the background knowledge that would have been possessed by a person of ordinary skill in the art at the time of the invention, and further expand upon the grounds for its decision-making.

**VACATED AND REMANDED**